FILED

MAY 16 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ROBERT ARTHUR FANNING,

                  Petitioner,

v.

DEAN BORDERS, Warden,

                  Respondent.

Case No.: 18cv1145-BTM (KSC)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Robert Arthur Fanning (hereinafter "Petitioner") is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) He was convicted in the San Diego County Superior Court in 1998 of one count of indecent exposure and sentenced to 26 years to life under California's Three Strikes law. (Id. at 1-2.) He challenges the denial of his state petition to recall his sentence under Proposition 36, which was denied based on a finding he posed an unreasonable risk of danger to public safety.[1] (Id. at 2-8.) He claims the state court erred in finding the

---

[1] Proposition 36, the Three Strikes Reform Act of 2012, created a procedure by which a prisoner serving a life sentence under the Three Strikes law for a third strike which is neither violent nor serious may petition for resentencing, but "will be denied resentencing if 'the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'" People v. Valencia, 3 Cal.5th 347, 350 (2017), quoting Cal. Penal Code § 1170.126(f).

definition of "unreasonable risk of danger to public safety" in Proposition 36 was not redefined by Proposition 47[2] (claim one), his Fourteenth Amendment right to a factually accurate sentencing determination was denied by reliance on his 30 year-old prior convictions to determine he currently poses an unreasonable risk to public safety (claim two), and his right against self-incrimination protected by the Fifth and Fourteenth Amendments was violated when the state court conditioned his entitlement to resentencing on an admission of culpability in prior convictions for which he continues to maintain his innocence (claim three). (Id. at 6-8.)

Respondent has filed an Answer and lodged the state court record. (ECF Nos. 8-9.) Respondent argues federal habeas relief is not available because: (1) claims one and two do not present cognizable federal claims, and even if they do Petitioner has not shown a violation of his federal constitutional rights, and (2) Petitioner has failed to show that the state court adjudication of any claim is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. (ECF No. 8-1 at 12-20.)

As set forth below, the Court finds Petitioner is not entitled to federal habeas relief because the state court adjudication of his claims is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court recommends the Petition be denied.

---

[2] Proposition 47, the Safe Neighborhoods and Schools Act of 2014, reduced certain felonies to misdemeanors and created a mechanism for prisoners to petition to have their felony convictions reclassified as misdemeanors and be resentenced, and, like Proposition 36, provided "sentencing courts discretion to decline to impose a lesser sentence if resentencing 'would result in an unreasonable risk of danger to public safety.'" Valencia, 3 Cal.5th at 351, quoting Cal. Penal Code § 1170.18(b)(3). "In contrast to Proposition 36, however, Proposition 47 restricted that discretion by defining the phrase 'unreasonable risk of danger to public safety' . . . [as] an unreasonable risk that the petitioner will commit a new violent felony within the meaning of Cal. Penal Code § 667(c)(2)(C)(iv). . . . [Which] identifies eight types of particularly serious or violent felonies, known colloquially as 'super strikes.'" Id. (internal citation omitted).

# I.    PROCEDURAL BACKGROUND

Petitioner was convicted on December 10, 1997, of one count of indecent exposure in violation of California Penal Code § 314.1. (Lodgment No. 1, Clerk's Transcript ["CT"] at 9.) He was sentenced to 26 years to life under California's Three Strikes law as a result of his criminal history, which the appellate court described as follows:

> Fanning was born in 1949 and has been incarcerated most of his adult life. When he was 17, he was committed to the Washington State Department of Institutions, Division of Juvenile Rehabilitation, based on charges that he was "exposing himself to small children and undressing in public." In 1968, when Fanning was 19 years old, he was first convicted of indecent exposure. He was incarcerated for six years and released on probation. [¶] In 1977, Fanning violated probation by exposing himself to two teenagers and showing them pornography.
>
> In 1984, Fanning was convicted of 38 arson and burglary counts stemming from 26 intentionally set fires of residences between March 1982 and January 1984 in the Clairemont area of San Diego.
>
> In 1993, shortly after he was released from prison, Fanning was seen naked in public. Police chased him but he fled. He was convicted of resisting a peace officer. [¶] In 1994, Fanning was arrested for running nude in the streets. His probation was revoked. He was released from prison in June 1995. A month later, Fanning was seen running naked in downtown San Diego, and his probation was again revoked.
>
> In January 1996, two days after his release from prison, he was observed walking naked in downtown San Diego. He was apprehended as he tried to flee, and he was incarcerated. [¶] In December 1996, Fanning was convicted of indecent exposure following a report he was masturbating in public.
>
> In July 1997, Fanning was seen completely nude on the stairs of the San Diego Convention Center. He told police that since 1993 he had had a severe methamphetamine problem and "his behavior was due to being under the influence." He was convicted of indecent exposure. [¶] In 1998, the court sentenced Fanning to 25 years to life plus one year in prison.

(Lodgment No. 5, People v. Fanning, No. D065320, slip op. at 2-3 (Cal.App.Ct. May 5, 2015).)

On September 11, 2013, Petitioner filed a motion to recall his sentence under Proposition 36 pursuant to California Penal Code § 1170.126. (CT 10-49.) The District Attorney opposed the motion but agreed Petitioner was entitled to a hearing to determine whether the court in its discretion would find based on a preponderance of the evidence that he posed an unreasonable risk to public safety. (CT 53-202.) A hearing on the motion was held on January 22, 2014. (CT 209.) The trial judge began the hearing by stating:

> Most recently Mr. Fanning has submitted himself to evaluation by a clinical and forensic psychologist, Shana Gauthier. The report of that evaluation is 13 pages and is attached to a brief filed by the public defender on behalf of Mr. Fanning. I have read that report carefully and have reconsidered the matter in its entirety; that is, I have reviewed all of the information on his criminal conviction history, his disciplinary record and his record of rehabilitation.
>
> I have now factored into that the opinions and conclusion of Dr. Gauthier, as well as the information that she recites. I have considered the petition, the brief filed on behalf of the petitioner, and all of the exhibits that have been supplied. I have reviewed the reply by the people and have considered all of the evidentiary material that they have submitted as well.
>
> I think there are a couple of things that need to be said in order to process the argument in the case, and that is, first, the commitment offense standing by itself would not be enough simply to say he's an unreasonable risk of danger to society. The court is mindful that, but for the history, this particular act would not even be a felony charge.
>
> The second thing that I think needs to be said is the disciplinary record and all of the information from inside the institution actually is quite favorable to Mr. Fanning. I suppose one more cynical that I would say that he has really adjusted well and his life is frankly much more acceptable given the restraints that the prison has made, and perhaps he does have an ability to conform his behavior and he shows that.
>
> I think, frankly, the much more significant issue is even in light of criminality or inappropriate behavior on the more recent level, is the breadth and depth of his problematic behavior, both sexual in nature, and probably more troubling, the arson behavior. Sufficient to say that he currently poses an unreasonable risk of danger to public safety, and I think the real focus needs to be on not only the breadth and the depth of his behaviors in his criminal

1  record, but really the breadth and the depth of his current denial and lack of
2  insight into his problems.

3     It seems to me that if an argument is to be made, it would be made
4  simply on the basis that he has not demonstrated, does not demonstrate, and
   quite the contrary, on an ongoing basis demonstrates that he doesn't get how
5  dangerous he is and he doesn't have the mechanism in place to control his
6  behavior outside the institution.

7  (Lodgment No. 2, Reporter's Tr. ["RT"] at 1-3.)

8     Counsel presented argument, a letter from Petitioner's mother was read into the
9  record, and Petitioner made a brief statement which is quoted below in the discussion of
10 claim three. (RT 3-12.) The trial judge denied the motion, stating:

11     I think, as my introductory remarks indicated, the primary issue is Mr.
12  Fanning's history, and his history does pose a significant concern and it does
    put him at a risk to reoffend.
13
14     I think the conclusion is that he is at a significantly high risk to reoffend,
    and that's not entirely based solely upon the history. And by "history," I mean
15  the indecent exposure, the fire-setting, his substance abuse and his sexual
16  abuse, whether nonchalant to diagnose it, or limit one's ability to diagnose
    because of definitions and/or failure to admit, there is clearly documented
17  history of sexual abuse.

18     You put that in combination of what I think are the critical facts, and
19  that is that he has had no significant effective treatment, his appreciation of
20  his sexual disorder is extraordinarily limited, he has antisocial traits, he has a
    significant history of substance abuse, and putting him back out into society,
21  I think clearly would put him in a position of exposure to facts and
22  circumstances that could be characterized as destabilizers.

23     Given his insight or lack therefore of his past behavior, his denial of
24  some of his past behavior, his failure to develop reasonable relapse prevention
    programs all lead this court to believe that at this time that if he were released
25  by virtue of a resentencing, he would, in fact, pose an unreasonable risk of
26  danger to public safety. [¶] If he is to be released in the future, it would be
    based upon parole determinations in the ordinary course.
27
28 (RT 12-13.)

Petitioner appealed, raising the same claims presented here, and the appellate court affirmed. (Lodgment Nos. 3-5.) He filed a petition for review in the state supreme court raising the same claims. (Lodgment No. 6.) That court stated:

> The petition for review is granted. Further action in this matter is deferred pending consideration and disposition of a related issue in *People v. Chaney*, S223676, and *People v. Valencia*, S223825 (see *Cal. Rules of Court, rule* 8.512(d)(2)), or pending further order of the court. Submission of additional briefing, pursuant to *California Rules of Court, rule 8.520*, is deferred pending further order of the court.

(Lodgment No. 7, <u>People v. Fanning</u>, No. S226955 (Cal. July 29, 2015).)

The state supreme court later issued an order stating: "The above-entitled matter, which was granted and held for *People v. Valencia* (2017) 3 Cal.5th 347, is dismissed."[3] (Lodgment No. 8, <u>People v. Fanning</u>, No. S226955, order at 1 (Cal. Nov. 21, 2017.)

## II.  PETITIONER'S CLAIMS

(1)   The state court is "Constitutionally required" to apply the more restrictive definition of "unreasonable risk to public safety" in Proposition 47 to the Proposition 36 petition brought by Petitioner. (ECF No. 1 at 6.)

(2)   Petitioner's Fourteenth Amendment right to a factually accurate sentencing determination was denied by the state court's reliance on his 30 year-old prior convictions to determine he currently poses an unreasonable risk to public safety. (<u>Id.</u> at 7.)

(3) Petitioner's right against self-incrimination protected by the Fifth and Fourteenth Amendments was violated when the state court conditioned his entitlement to relief on admitting culpability in prior convictions for which he maintains his innocence. (<u>Id.</u> at 8.)

## IV.  DISCUSSION

For the following reasons, the Court finds federal habeas relief is not available because the state court adjudication of Petitioner's claims is neither contrary to, nor an

---

[3]  Because <u>Valencia</u> found the definition of "unreasonable danger to public safety" in Proposition 47 did not apply to Proposition 36, it did not need to reach the issue in <u>Chaney</u> whether Proposition 47's definition applied retroactively. <u>Valencia</u>, 3 Cal 5th at 377.

unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. The Court recommends the Petition be denied.

## A.    Standard of Review

In order to obtain federal habeas relief on a claim adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) is a threshold requirement, and even if it is satisfied, or does not apply, a petitioner must still show a federal constitutional violation occurred in order to obtain federal habeas relief. Fry v. Pliler, 551 U.S. 112, 119-22 (2007).

The decision of a state court may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. In order to satisfy § 2254(d)(2), a petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## B.    Claim One

Petitioner first alleges the state court erred in determining that Proposition 47's more restrictive definition of "unreasonable risk to public safety" does not apply to petitions brought pursuant to Proposition 36, because its application to his case is "Constitutionally required." (ECF No. 1 at 6.) Respondent answers that the California Supreme Court in

*Valencia* settled and rejected Petitioner's reading of state law, and a challenge to a state supreme court's interpretation of state law cannot form the basis of a federal habeas claim. (ECF No. 8-1 at 12-15.)

The Court must identify which state court opinion, if any, is subject to 28 U.S.C. § 2254(d). See Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005) ("Before we can apply [the] standards [of 28 U.S.C. § 2254(d)], we must identify the state court decision that is appropriate for our review. When more than one state court has adjudicated a claim, we analyze the last reasoned decision.") Claim one was first presented to the state appellate court in Petitioner's reply brief on direct appeal. (See Lodgment No. 5, People v. Fanning, No. D065320, slip op. at 13.) The appellate court began by noting that although the same issue was then pending before the California Supreme Court in Valencia, it was still required to address the claim, and stated:

> Our task is one of statutory construction. . . . [¶] We therefore consult "'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. (Citations.)' (Citation.) We also "'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet."'" (Osuna, supra, 225 Cal.App.4th at p. 1034.) With these extrinsic aids, we "'"'select the construction that comports most closely with the apparent intent of the (electorate), with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."'" (Id. at pp. 1034-1035.)

(Id. at 15.)

After a lengthy examination of those materials, the appellate court denied Petitioner's claim, stating:

> In light of the foregoing, we cannot reasonably conclude voters intended the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) (Proposition 47), to apply to that phrase as it appears in section 1170.126, subdivision (f) (Proposition 36), despite the former section's preamble, "As used throughout this Code." Voters cannot intend something of which they are unaware.

8

Additionally, as a matter of statutory construction, we note the TSRA's sunset clause effectively precluded most new applications for relief under the TSRA after November 7, 2014 (see § 1170.126, subd. (b)), while Proposition 47 (and its newly enacted definitional provisions under section 1170.18, subdivision (c)) took effect on November 5, 2014 (Cal. Const., art. II, § 10, subd. (a)), which would provide only a two-day window during which an applicant under the TSRA would reap the benefits of the more restrictive "dangerousness" definitions adopted by Proposition 47. As an additional matter of statutory construction, we decline to ascribe to the electorate an intent to overlay a definitional amendment onto a remedial scheme that effectively expired two days after the definitional amendment would have taken effect.

Finally, and again as a matter of statutory construction, adopting Fanning's interpretation of the intended scope of section 1170.18, subdivision (c), would present serious questions under the equal protection clauses of the United States and California Constitutions. Specifically, under Fanning's construction, the more restrictive "dangerousness" definition adopted by Proposition 47 would apply only to applicants who invoked the TSRA during the two-day window when both were in effect or (assuming retroactivity) to a slightly larger class of applicants under the TSRA whose matters were not yet final before the effective date of Proposition 47. However, the more restrictive "dangerousness" definition adopted by Proposition 47 would provide no benefit to those applicants who, although identically situated to Fanning, had their TSRA applications denied and which denials became final before November 5, 2014. "Both the United States Supreme Court and the California courts have pointed out on numerous occasions that a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which avoids any doubt concerning its validity." (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 147, fn. omitted, overruled on other grounds in *People v. Anderson* (1987) 43 Cal.3d 1104, 1147.) Our construction of Proposition 47's provisions avoids potential equal protection infirmities of its provisions by limiting its application to applicants under Proposition 47's remedial scheme.

(Id. at 21-23) (footnote omitted.)

Petitioner thereafter filed a petition for review in the California Supreme Court, which granted review and deferred consideration while Valencia was pending (Lodgment No. 7), and later dismissed the case with an order which stated: "The above-entitled matter, which was granted and held for *People v. Valencia* (2017) 3 Cal.5th 347, is dismissed."

(Lodgment No. 8, <u>People v. Fanning</u>, No. S226955, order at 1.) The California Supreme Court in <u>Valencia</u> also rejected the claim raised in this Court by Petitioner. It held, like the appellate court here, that as a matter of statutory construction the definition of "unreasonable risk of danger to public safety" in Proposition 47 applies "only to the resentencing proceedings that are authorized under Proposition 47." <u>Valencia</u>, 3 Cal.5th at 375. The <u>Valencia</u> opinion also found that such a statutory interpretation did not violate state or federal principles of equal protection, due process, and cruel and unusual punishment. <u>Id.</u> at 375-77.

There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06 (1991). Because the California Supreme Court's opinion in <u>Valencia</u> is consistent with the state appellate court's opinion rejecting claim one, the application of 28 U.S.C. § 2254(d) will be the same regardless of which opinion is considered the last reasoned opinion of the state court with respect to claim one.

Respondent argues that Petitioner's claim that the state court erred in refusing to apply Proposition 47's definition of "unreasonable risk of danger to public safety" is not a cognizable claim on federal habeas based on the well-settled principle that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>see also</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); <u>Aponte v. Gomez</u>, 993 F.2d 705, 707 (9th Cir. 1993) (holding that federal habeas courts "are bound by a state court's construction of its own penal statutes."); <u>Makal v. Arizona</u>, 544 F.2d 1030, 1035 (9th Cir. 1976) ("So long as the type of punishment is not based upon any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state statutes are matters of state concern.") There is a long-recognized

exception to that general rule where a state court's application of state law is arbitrary or capricious. See Richmond v. Lewis, 506 U.S. 40, 50 (1992) (holding that a state court's application of state law does not rise to the level of a federal due process violation unless it was so arbitrary or capricious as to constitute an independent due process violation); Knapp v. Cardwell, 667 F.2d 1253, 1260 (9th Cir. 1982) ("Federal courts will not review a state supreme court's interpretation of its own statute unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution."), citing Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975), Radio Station WOW, Inc. v. Johnson, 326 U.S. 120, 129 (1945), Ward v. Love County, 253 U.S. 17 (1920) and Terre Haute & I. R. Co. v. Indiana, 194 U.S. 579 (1904).

Petitioner raised federal constitutional claims in the state appellate and supreme courts on direct appeal, which included citations to numerous federal cases. (See Lodgment Nos. 3, 6.) As set forth below, the state court addressed whether its statutory interpretation violated federal constitutional principles of due process, equal protection and cruel and unusual punishment. The Court therefore finds that Petitioner has stated a cognizable federal habeas claim by alleging in state court, and here, that he was denied those protections by the state court's statutory interpretation that the more restrictive definition of "unreasonable danger to public safety" in Proposition 47 did not apply to his Proposition 36 petition.[4] However, for the following reasons, it is clear that his claims fail and he is not entitled to federal habeas relief.

Petitioner argued in state court that the interpretation of its penal laws violated Sixth Amendment due process sentencing principles set forth in Apprendi v. New Jersey, 530

---

[4] Although Petitioner merely alleges in his pro se federal Petition that an interpretation of state law applying Proposition 47's definition to him is "Constitutionally required" (ECF No. 1 at 6), "[t]he Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987), quoting Boag v. MacDougall, 454 U.S. 364, 365 (1982); see also Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner habeas petitions is especially important as to which claims are presented).

11

U.S. 466 (2000), which provides that "[o]ther than the fact of a prior conviction, any fact that *increases* the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Id. at 490 (emphasis added). However, Petitioner's sentence was not increased, it simply was not immediately reduced prior to his parole eligibility. The Supreme Court has held that a retroactive federal sentence reduction statute did not implicate the Sixth Amendment where it did "not serve to increase the proscribed range of punishment." See Dillon v. United States, 560 U.S. 817, 828-29 (2010) (holding that because the sentence reduction provision at issue provides judges with discretion to resentence within the guidelines, "'there is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused.'"), quoting Oregon v. Ice, 555 U.S. 160, 169 (2009). Petitioner has not shown a Sixth Amendment violation from the refusal to construe Proposition 47 as restricting the trial judge's discretion to grant him relief on his Proposition 36 petition, because irrespective of whether that discretion was controlled by Proposition 36 or 47, Petitioner is serving a sentence imposed consistent with Sixth Amendment principles. He has not established that the statutory interpretation by the state court is contrary to, or involved an unreasonable application of, clearly established federal law regarding Sixth Amendment protections, Apprendi, 530 U.S. at 490; Dillon, 560 U.S. at 828-29, or that it is based on an unreasonable determination of the facts. Miller-El, 537 U.S. at 340 (holding that in order to be entitled to relief under 28 U.S.C. § 2254(d)(2), a petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable). Neither has he shown it was so arbitrary or capricious as to constitute a due process violation, Richmond, 506 U.S. at 50, or that it "is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution." Knapp, 667 F.2d at 1260.

The same is true regarding equal protection principles. Federal equal protection "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

18cv1145-BTM (KSC)

The state court stated:

> It is not difficult to conclude that those resentenced under Proposition 36 are not similarly situated to those resentenced under Proposition 47. These are two very different populations of offenders. As the text of Proposition 47 indicates, that measure focused on offenders convicted of a set of low-level, nonserious, nonviolent felonies and reduced them to misdemeanors. In contrast, Proposition 36 concerned the resentencing of recidivist offenders who had two prior violent or serious and a third nonserious, nonviolent felony conviction, and who are serving terms of 25 years to life. Obviously, those recidivists with criminal records involving serious or violent felonies, who may have already been incarcerated for a lengthy period, raise concerns for public safety different from those who committed what were previously low-level felonies. Thus, the two groups are not similarly situated for purposes of resentencing because one group consists of recidivist serious or violent offenders, who may have the propensity to commit serious or violent felony crimes and the other generally consists of low level offenders.

Valencia, 3 Cal.5th at 376.

Because Petitioner is not similarly situated to prisoners seeking resentencing under Proposition 47, he has not shown that the state court's refusal to apply Proposition 47's definition of "unreasonable risk of public safety" to his petition under Proposition 36 is contrary to, or an unreasonable application of, clearly established federal law regarding equal protection principles, Cleburne, 473 U.S. at 439, that it involves an unreasonable determination of the facts, Miller-El, 537 U.S. at 340, that it was so arbitrary or capricious as to constitute an independent due process violation, Richmond, 506 U.S. at 50, or that it "is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution." Knapp, 667 F.2d at 1260.

Finally, there is no basis to find Petitioner was subjected to cruel and unusual punishment in violation of the Eight Amendment. As the state court noted:

> For these same reasons, the defendant's Eighth Amendment challenge fails as well because there is a valid reason to apply less lenient resentencing criteria to third strike offenders, as opposed to low-level offenders whose crimes are now reclassified as misdemeanors.

Valencia, 3 Cal.5th at 376-77.

"In judging the appropriateness of [a prisoner]'s sentence under a recidivist statute, we may take into account the government's interest not only in punishing the offense of conviction, but also its interest 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992), quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980) (upholding a life sentence under a recidivist statute for three felonies involving a forged $28.36 check, the fraudulent use of a credit card to obtain $80.00 worth of goods and services, and obtaining $120.75 by false pretenses); Solem v. Helm, 463 U.S. 277, 289-90 (1983) (noting that outside the context of capital punishment, the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime.") Given the serious nature of Petitioner's prior conviction of 38 arson and burglary counts from intentionally setting 26 residential fires, in addition to his other offenses, he has not shown that the statutory interpretation by the state court is contrary to, or an unreasonable application of, clearly established federal law regarding Eighth Amendment sentencing principles, that it involves an unreasonable determination of the facts, is arbitrary or capricious, or so clearly untenable as to amount to a subterfuge to avoid federal review of his federal Constitutional claims.

In sum, the Court finds that the state court adjudication of claim one is neither contrary to, nor an unreasonable application of, clearly established federal law. See White v. Woodall, 572 U.S. 415, 426 (2014) (holding that relief under 28 U.S.C. § 2254(d)(1) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."), quoting Harrington v. Richter, 562 U.S. 86, 103 (2011). Neither is the state court adjudication based on an unreasonable determination of the facts. See Miller-El, 537 U.S. at 340 (holding that in order to be entitled to relief under 28 U.S.C. § 2254(d)(2), a petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable). The Court therefore recommends habeas relief be denied as to claim one.

## C.     Claim Two

Petitioner alleges in claim two that his Fourteenth Amendment right to a factually accurate sentencing determination was denied by the state court's reliance on his 30 year-old prior convictions to determine he currently poses an unreasonable risk to public safety, arguing there is no "rational nexus between the remote priors and current dangerousness." (ECF No. 1 at 7.) Respondent answers that Petitioner was denied resentencing not because of his criminal history, but based on a psychologist's assessment and a lack of insight into his behavior, that he has failed to identify any clearly established federal law applicable to this claim, and the only way he can raise a cognizable federal claim is to demonstrate that a sentencing error occurred which was so arbitrary and capricious as to constitute an independent due process violation. (ECF No. 8-1 at 15-17.)

Claim two was presented to the state supreme court in a petition for review which was dismissed with an order which stated: "The above-entitled matter, which was granted and held for *People v. Valencia* (2017) 3 Cal.5th 347, is dismissed." (Lodgment No. 8, People v. Fanning, No. S226955, order at 1.) Petitioner had previously raised claim two on direct appeal, which the appellate court denied in a reasoned opinion. (Lodgment Nos. 3-5.)

Because Valencia did not address this precise issue, the Court will look through the otherwise silent denial by the state supreme court to the last reasoned state court opinion addressing claim two, the appellate court opinion. See Valdez v. Montgomery, 918 F.3d 687, 697 (9th Cir. 2019) (recognizing that the look though doctrine applies only where the higher and lower courts addressed the same precise issue). The appellate court stated:

> Section 1170.126, subdivision (f), provides that a petitioner shall not be resentenced if "the court, *in its discretion*, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.) By its plain language, subdivision (f) of section 1170.126 leaves the determination of whether resentencing would present an unreasonable risk of danger to public safety to the trial court's discretion. This conclusion finds further support in subdivision (g) of this same statute, which provides in part that a court may consider various enumerated factors "(i)n exercising *its discretion* in subdivision (f)." (Italics added.)

The appropriate standard of review involves two distinct but interdependent steps. The first step requires the People to carry the burden of proving, by a preponderance of the evidence, the facts on which a finding that resentencing a petitioner would pose an unreasonable risk of danger to public safety reasonably can be based, and that appellate review of those facts is based on the substantial evidence standard. However, the preponderance of the evidence standard does not apply to the trial court's determination regarding dangerousness. Instead, the ultimate decision of whether resentencing an inmate would pose an unreasonable risk of danger to public safety is within the sound discretion of the trial court, and therefore its finding must be upheld if it does not constitute an abuse of discretion, that is, if it falls within the bounds of reason, all of the circumstances being considered. This construction comports with the plain language of section 1170.126, subdivision (f), that a petitioner shall not be resentenced if "the court, *in its discretion*, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.)

We conclude the court's exercise of discretion contains ample support in the record. Fanning has a lengthy record of prior offenses, including arson of several residences and various acts of exhibitionism. Moreover, his record demonstrates a marked inability to remain law-abiding during the brief periods when he was free from incarceration. The psychologist found Fanning posed a high risk for recidivism based on his prior crimes, his "rudimentary" insights into the basis for his criminal conduct, his failure to receive treatment during his incarceration, and his lack of a relapse prevention plan. In light of the substantial evidence in the record, it is of no moment that the court in its ruling did not expressly refer to Fanning's advanced age and the fact his prior strikes were committed when he was 34 years old, or any other factor which would have favored the granting of Fanning's petition.

. . . Moreover, contrary to Fanning's claim, the court manifestly did not limit itself to reciting Fanning's "criminal behavior as grounds for denial of resentencing." Rather, the court was more persuaded by Fanning's lack of insight into his criminal conduct or plan to address the stressors that might arise upon his release, which would increase Fanning's risk of reoffending, putting the public in unreasonable danger. On this record the trial court's concern was warranted.

(Lodgment No. 5, People v. Fanning, No. D065320, slip op. at 11-13.)

As Respondent recognizes, a federal due process violation can arise from a state law ruling that is arbitrary or capricious. See Richmond, 506 U.S. at 50 (holding that a state

court's application of state law does not rise to the level of a federal due process violation unless it was so arbitrary or capricious as to constitute an independent due process violation). "The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). In addition, in both the state appellate and supreme courts (see Lodgment No. 3 at 52; Lodgment No. 6 at 34), Petitioner cited Hicks v. Oklahoma, 447 U.S. 343 (1980) for the proposition that a state sentence based on an arbitrary factual determination can rise to the level of a federal due process violation. See Hicks, 447 U.S. at 346 (holding that a state statute which vested sentencing discretion in a jury created "a substantial and legitimate expectation that [a defendant] will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, . . . and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.") (citation omitted).

Petitioner contends there is no rational nexus between his current dangerousness and his 38 arson and burglary convictions which arose from his having intentionally set fires in 26 residences in 1984. Even if that is true, as the state appellate court noted, the trial court's determination that he posed a present danger to public safety was based on additional considerations. In denying Petitioner's resentencing petition, the trial judge stated:

> I think the conclusion is that he is at a significantly high risk to reoffend, and that's not entirely based solely upon the history. And by "history," I mean the indecent exposure, the fire-setting, his substance abuse and his sexual abuse, whether nonchalant to diagnose it, or limit one's ability to diagnose because of definitions and/or failure to admit, there is clearly documented history of sexual abuse.
>
> You put that in combination of what I think are the critical facts, and that is that he has had no significant effective treatment, his appreciation of his sexual disorder is extraordinarily limited, he has antisocial traits, he has a significant history of substance abuse, and putting him back out into society, I think clearly would put him in a position of exposure to facts and circumstances that could be characterized as destabilizers.

1    Given his insight or lack therefore of his past behavior, his denial of
2    some of his past behavior, his failure to develop reasonable relapse prevention
     programs all lead this court to believe that at this time that if he were released
3    by virtue of a resentencing, he would, in fact, pose an unreasonable risk of
4    danger to public safety.

5    (RT 12-13.)

6    The finding by the appellate court that the exercise of discretion by the trial judge

7    has ample factual support in the record apart from any reliance on the facts of the prior

8    convictions is objectively reasonable. The trial judge indicated that the conclusion he drew

9    that Petitioner "is at a significantly high risk to reoffend," was "not entirely based solely

10   upon [his history of] indecent exposure, the fire-setting, his substance abuse and his sexual

11   abuse." (RT 12.) The trial judge took into account aspects of Petitioner's criminal history

12   other than his arson convictions, including "that he has had no significant effective

13   treatment, his appreciation of his sexual disorder is extraordinarily limited, he has

14   antisocial traits, he has a significant history of substance abuse, and putting him back out

15   into society, I think clearly would put him in a position of exposure to facts and

16   circumstances that could be characterized as destabilizers." (RT 13.) Petitioner has not

17   shown the state appellate court adjudication of this claim is contrary to, or an unreasonable

18   application of, clearly established federal law providing that arbitrary and capricious

19   factual findings or applications of state law can rise to the level of a federal due process

20   violation, Richmond, 506 U.S. at 50; Hicks, 447 U.S. at 346, that it involves an

21   unreasonable determination of the facts, Miller-El, 537 U.S. at 340, that it was so arbitrary

22   or capricious as to constitute a due process violation, Richmond, 506 U.S. at 50, or that it

23   "is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation

24   by the state of rights guaranteed by the Constitution." Knapp, 667 F.2d at 1260.

25   The Court finds federal habeas relief is not available as to claim two because the

26   state court adjudication is neither contrary to, nor an unreasonable determination of, clearly

27   established federal law, and is not based on an unreasonable determination of the facts.

28   Woodall, 572 U.S. at 426; Richter, 562 U.S. at 103; Miller-El, 537 U.S. at 340.

18cv1145-BTM (KSC)

## D. Claim Three

Petitioner alleges in his final claim that by basing its decision on his "lack of insight" into his 1985 arson convictions, for which he maintains his innocence, "[t]he trial court made clear that the resentencing was conditioned on my confession to a prior crime, thus requiring me to 'testify' against myself as that term is understood by the 5th and 14th Amendments and subsequent Supreme Court jurisprudence." (ECF No. 1 at 8.)

Respondent answers that the adjudication of this claim by the state court, on the basis that Petitioner was not compelled to testify at his hearing, is not an unreasonable determination of the facts because he was not asked questions at the hearing but voluntarily made a statement expressing remorse and asking for mercy. (ECF No. 8-1 at 17-20.) Respondent also argues that the rejection of the claim by the state court is neither contrary to, nor an unreasonable application of, clearly established federal law which provides that an admission to having committed a crime for which there can be no future criminal proceedings, such as Petitioner's prior convictions, does not violate the privilege against self-incrimination. (Id.)

Claim three was presented to the state supreme court in a petition for review which was dismissed with an order which stated: "The above-entitled matter, which was granted and held for *People v. Valencia* (2017) 3 Cal.5th 347, is dismissed." (Lodgment No. 8, People v. Fanning, No. S226955, order at 1.) The claim was presented to and denied by the appellate court in a reasoned opinion. (Lodgment Nos. 3-5.) As with claim two, the Valencia opinion did not address this precise issue, and the Court will therefore apply the provisions of 28 U.S.C. § 2254(d) to the last reasoned state court opinion addressing the claim, the appellate court opinion, which states:

> Despite Fanning's criticism of the trial court's ruling as violating his right against self incrimination, we note the court did not require Fanning to testify. We conclude it had sufficient basis for its decision in the psychologist's report, and it merely acknowledged that Fanning's prospects for rehabilitation and his level of public danger were tied to a recognition of his involvement in committing the arsons; therefore, considering Fanning's decision to deny his role in the crime, the court was entitled to conclude

Fanning would continue to pose an unreasonable risk of danger to the public if released. Moreover, contrary to Fanning's claim, the court manifestly did not limit itself to reciting Fanning's "criminal behavior as grounds for denial of resentencing." Rather, the court was more persuaded by Fanning's lack of insight into his criminal conduct or plan to address the stressors that might arise upon his release, which would increase Fanning's risk of reoffending, putting the public in unreasonable danger. On this record the trial court's concern was warranted.

(Lodgment No. 5, <u>People v. Fanning</u>, No. D065320, slip op. at 12-13.)

The Fifth Amendment privilege against compelled self-incrimination applies to state sentencing proceedings through the Fourteenth Amendment. <u>Estelle v. Smith</u>, 451 U.S. 454, 462-63 (1981). "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict and *punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" <u>Id.</u> at 462, quoting <u>Culombe v. Connecticut</u>, 367 U.S. 568, 582 (1961).

Petitioner's counsel at the hearing on his resentencing petition stated that Petitioner "wants to address the court" (RT 5-6), and Petitioner made the following statement:

I spent the last probably 14 of those 16 years doing a lot of soul-searching, if you will, and I discovered a lot of things about myself that I found totally disgusting. I'm not happy with myself whatsoever. I'm ashamed of what I've done. I'm ashamed about how I made other people feel, you know, the shambles that I've made of my own life. I've hurt my own mother.

And I made a vow to myself and to God and to anybody else here - you as well, your honor - that never, ever again will I set foot in one of these courtrooms again if you give me a chance to get out of here.

I give my soul. And a man's word's got to be worth something because - and that's all we really have is our word. So I'm just putting myself at your mercy and begging for another chance, please, your honor. [¶] And as my attorney said, I will accept any help that's available out there. More than happy to.

(RT 7.)

"[T]he Fifth Amendment proscribes only self-incrimination obtained by a 'genuine compulsion of testimony.'" United States v. Washington, 431 U.S. 181, 187 (1977), quoting Michigan v. Tucker, 417 U.S. 433, 440 (1974). Petitioner provided his statement voluntarily, and he has not shown coercion. Id.; see also Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 287-88 (1998) (acknowledging that pressure to speak at parole hearing "in the hope of improving his chance of being granted [parole] does not make the interview compelled.") Neither has he shown his privilege against self-incrimination was violated by being required to admit guilt in crimes for which he had already been convicted and sentenced, because he has not shown his statement could be used in a future criminal proceeding. See Lefkowitz v. Turley, 414 U.S. 70, 78 (1973) ("[A] witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant.")

In any case, Petitioner has not shown that the decision to decline to resentence him was based on his refusal to admit guilt in his prior arson convictions. As quoted above, the trial judge indicated that the conclusion he drew that Petitioner "is at a significantly high risk to reoffend," was "not entirely based solely upon the history. And by 'history,' I mean the indecent exposure, the fire-setting, his substance abuse and his sexual abuse." (RT 12.) Thus, the record shows that the trial judge considered aspects of Petitioner's criminal history other than his arson convictions. In addition, the trial judge stated: "You put that in combination of what I think are the critical facts, and that is that he has had no significant effective treatment, his appreciation of his sexual disorder is extraordinarily limited, he has antisocial traits, he has a significant history of substance abuse, and putting him back out into society, I think clearly would put him in a position of exposure to facts and circumstances that could be characterized as destabilizers." (RT 13.) As the appellate court observed, the trial judge "manifestly did not limit itself to reciting Fanning's criminal behavior as grounds for denial of resentencing. . . . [but] was more persuaded by Fanning's lack of insight into his criminal conduct or plan to address the stressors that might arise

upon his release, which would increase Fanning's risk of reoffending, putting the public in unreasonable danger." (Lodgment No. 5, People v. Fanning, No. D065320, slip op. at 13.) Petitioner has not shown that the state appellate court adjudication of this claim is contrary to, or an unreasonable application of, clearly established federal law regarding his Fifth Amendment privilege against self-incrimination, Washington, 431 U.S. at 187; Woodard, 523 U.S. at 287-88; Turley, 414 U.S. at 78, involves an unreasonable determination of the facts, Richter, 562 U.S. at 103, is arbitrary or capricious, Richmond, 506 U.S. at 50, or "is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution." Knapp, 667 F.2d at 1260.

The Court finds that federal habeas relief is unavailable with respect to claim three because the state court adjudication is not contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. Woodall, 572 U.S. at 426; Richter, 562 U.S. at 103; Miller-El, 537 U.S. at 340.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing Judgment be entered denying the Petition for a Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **June 14, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 21, 2019.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: _5/16/18_

KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

18cv1145-BTM (KSC)